CHRISTEN CHRISTENSEN, Respondent, *v.* JAMES S. HANNON, INC., Appellant.

First Department, June 13, 1919.

Negligence — contributory negligence — burden of proof — facts constituting contributory negligence by one falling into freight elevator shaft — failure to guard entrance to freight elevator shaft as obviating necessity for precaution.

A plaintiff, in an action to recover damages caused by negligence must, in order to recover, show not only the negligence of the defendant, but that he himself was free from contributory negligence.

In an action to recover damages for injuries received by falling into a freight elevator shaft the plaintiff fails to establish his freedom from contributory negligence where the evidence adduced at the trial on his behalf shows that he had just been employed to work in a stable and was directed to go to the rear of the stable to ride up on the elevator, that the place where the elevator was situated was somewhat dark, but that, according to his own testimony, there was light enough so that he could see the walls of the shaft and electric light fixtures nearby, and that he walked straight ahead without looking down at the floor to see where the floor ended or whether the elevator was in place before he stepped into the shaft.

*It seems*, that the rule applicable to passenger elevators that where the door to the shaft is left open an invitation to enter may be implied, does not apply to freight elevators and that the failure to have the entrance closed or guarded by a chain or other contrivance does not constitute an invitation to enter which would put the plaintiff off his guard.

MERRELL, J., dissented.

APPEAL by the defendant, James S. Hannon, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 14th day of December, 1918, upon the verdict of a jury for $8,000, and also from an order entered in said clerk's office on the 16th day of December, 1918, denying defendant's motion for a new trial made upon the minutes.

*J. Arthur Hilton*, for the appellant.

*Herbert C. Smyth* of counsel [*McDonnell & Lebett*, attorneys], for the respondent.

First Department, June, 1919. [Vol. 188.

SMITH, J.:

The action is for negligence. The defendant does a trucking business and has a stable upon Sixteenth street, between Ninth and Tenth avenues. It occupies both 445 and 447 West Sixteenth street. The two buildings were about fifty-two feet in width and about one hundred feet in depth. Part way from the front of the buildings there is an opening of about twelve feet in width between the two parts of the stable, or the two buildings, as it is in the evidence spoken of, which constitute the stables. Four hundred and forty-seven is the westerly half. At the back end of 447 there is a ramp for the horses whereon they go up and down. In the building 445 at the back end there is, in part, a toilet and a little cupboard for harness and in part an elevator shaft. This elevator shaft is about ten feet in width and about eighteen feet in depth. In this elevator shaft is run a freight elevator upon which trucks are taken to upper stories in the building and returned. These trucks were drawn by horses and not run by electricity.

Upon the morning of the accident, which was in June, 1918, about seven o'clock, the plaintiff was in front of this building and was out of work. The man in charge of the building named Michael Hannon being short of help went out to him and asked him if he wanted to drive a team. He said he did. Hannon took the plaintiff inside of the building, at the office, which was in the front part of 447. At this point the stories differ. The plaintiff swears that this man Hannon told him to come along with him to the elevator and go up with him in the elevator; that they went down in the building 447, passed through into the building 445, through this opening and then back until they had nearly reached this elevator shaft. Hannon then told him to stop and wait a minute, as he wanted to go back and get a part of a harness. After Hannon had started around by the side of the elevator he called back to him, " Go ahead, I will be there in a minute." Thereupon the plaintiff started forward into the elevator shaft, and as the elevator was not there, he fell to the floor below and was badly injured. Ordinarily this elevator shaft is protected by a chain which is put up in front of it. He swears that there was no chain there at the time and nothing to hinder him in going forward. The elevator shaft was composed of

walls which had been whitewashed, and these walls the plaintiff could see. He swears that it was dark, very dark back there. However, the day was a bright day in June at seven o'clock in the morning. He swears that he saw two electric fixtures, one of them right at the opening of the elevator shaft in the ceiling, which was not lighted, so that it could not have been so very dark at that place at that time. Moreover, there were windows in the shaft at each story which, though perhaps dirty, gave some light to the shaft. The absence of the chain or guard to the elevator shaft would probably be sufficient to authorize the jury in saying that the defendant was guilty of negligence; but the defense here urged is that plaintiff, as matter of law, was guilty of contributory negligence. It will be borne in mind that he was going into this elevator shaft. That was his purpose. He knew that he was going there. This place was entirely new to him. He did not follow Hannon when he went into the shaft, for Hannon had stepped around by the other side, and yet the plaintiff swears over and over again that he assumed that the elevator was there. He did not look to see if there was any floor there. He looked straight forward, notwithstanding it was dark, notwithstanding there was nothing in the shaft to indicate that the elevator was there. He kept his eyes straight forward, without looking up or down when he walked into that elevator shaft. He swears in part as follows: " Q. And this shaft which you say you saw had three whitewashed sides? A. Yes. Q. When you were walking there, were you looking down? A. No, looking right ahead. Q. You did not look down at the floor as you walked into the shaft? A. No. Q. You did [not] look down at the floor at all from the time that you started to walk that last three and a half or four feet, did you look down at the floor at all before getting into the shaft? A. No. Q. You say that you were looking straight ahead? A. Yes. Q. And more up? A. Right straight ahead. Q. On a line of vision of your eyes? A. Yes. Q. Did you try at any time to look down to see where the floor ended? A. No, sir. Q. You did not do that? A. No."

Then again: " Q. Never looked down to see where the floor ended and where the bottom of the shaft began, did you? A. No, sir. * * * Q. So that when you got to the edge,

or after you had taken one or two steps and just before you went into the elevator shaft, you did not look down, did you, to see whether or not the elevator floor was there? A. No, I did not. Q. You did not? A. No. Q. But was looking still right ahead at the wall? A. Right straight ahead, yes. Q. You knew that wall that you were looking at and those three walls enclosed an elevator shaft, didn't you? A. Yes."

This plaintiff is required to establish his right to recover and show not only the negligence of the defendant but that he himself was free from contributory negligence. That the building was not absolutely dark is shown by the fact that he saw the electric light fixture in the ceiling near this elevator shaft and he also swears that he saw the floor on which he was walking in the building 445 before he reached this elevator. From the whitewashed walls of the shaft, if not from the window light, he could see just where the elevator ran, and his own evidence to the effect that he made no effort to discover where the floor of the building ended and whether the elevator was in place before he stepped into the shaft shows conclusively to my mind that he failed to exercise the care of a reasonably prudent man. It is true the chain was not up that usually guards that elevator, according to his evidence, but he had no knowledge that a chain was usually there. There is a class of cases where a passenger elevator door is open, where it has been held to constitute an invitation to one desiring to ride in the elevator to walk in. This rule has never to my knowledge, however, been applied to a freight elevator which had no door which opened and shut, so that there was here no such invitation as would put the plaintiff off his guard. There are also cases where one following another may be deemed to take assurance from the fact that others preceded him that the way was safe. But here the plaintiff did not follow Hannon. Hannon confessedly went around the other side of the elevator shaft in order to get a piece of harness. If we give any effect whatever to this rule requiring the plaintiff to prove his absence of contributory negligence, it must be held that he has wholly failed to establish that fact and, on the contrary, has shown that he was in fact guilty of such negligence as must defeat his right to recover.

The judgment and order should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

The finding that plaintiff was free from contributory negligence contributing to the injury is reversed.

CLARKE, P. J., LAUGHLIN and PHILBIN, JJ., concurred; MERRELL, J., dissented.

Judgment and order reversed, with costs, and complaint dismissed, with costs.